UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MATTHEW KEY,

    Plaintiff,

v.                                                  Case No: 5:12-CV-00415-GKS-PRL

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

    Defendant.

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). The Court has reviewed the record, memoranda, and applicable law. For the reasons set forth herein, the Commissioner's decision is due to be **AFFIRMED**.

    **I.**     **Procedural History and Summary of the ALJ's Decision**

On February 14, 2001, Plaintiff filed an application for DIB alleging a disability onset date of October 12, 2000. (Tr. 66). The claim was denied initially and again upon reconsideration. (Tr. 66-68). After a hearing in October 2004 an Administrative Law Judge ("ALJ") found the Plaintiff not disabled. (Tr. 110-19). The Plaintiff sought review by the Appeals Council, which then remanded on May 17, 2006 for further determinations. (Tr. 137-39). Following a new hearing, a second decision was issued on March 20, 2007, again finding

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

the Plaintiff not disabled. (Tr. 57-65). Review was denied by the Appeals Council on February 28, 2008. (Tr. 684-87). Plaintiff appealed to this court, which issued an opinion on September 17, 2009, remanding the case for re-evaluation of the record. (Tr. 785-98). Another hearing was held by an ALJ on March 2, 2010, where the Plaintiff was represented by an attorney. (Tr. 972). A medical expert and a vocational expert ("VE") also testified. (Tr. 989-1022). A third decision was issued on April 15, 2010, finding the Plaintiff not disabled. (Tr. 765-84).

In the third decision, which is challenged now, the ALJ determined that the Plaintiff met the insured status requirements of the Social Security Act ("SSA") through March 31, 2005. (Tr. 767). At step one, the ALJ found that the claimant had not engaged in substantial gainful activity from the alleged onset date of October 12, 2000, through his date last insured, March 31, 2005. At step two, the ALJ further determined that the Plaintiff had the following severe impairments, "degenerative disk disease, degenerative joint disease, disorders of the spine, knees and shoulders, an affective disorder and fibromyalgia (20 CFR 404.1520(c))." (Tr. 768). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equalled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 768). Next, the ALJ found that during the relevant time period the Plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 404.1567(b) except the [Plaintiff] required a sit/stand option and needed to avoid unprotected heights and proximity to heavy moving machinery. The [Plaintiff] required a low stress work environment and could occasionally bend, crouch, kneel, stoop, crawl, or squat. In addition, the claimant needed to avoid the operation of foot controls, overhead reaching and the push-pull of arm controls.

(Tr. 771). At step four, the ALJ determined that the Plaintiff was unable to perform any past relevant work. Finally at step five, based on the Plaintiff's age, education, work experience, and

RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that the Plaintiff could perform, such as Inspector, Hand Packager; Ticketer; and Hand Sander, and based on the VE testimony that these jobs would still be available to a person required to use a cane to ambulate.. (Tr. 782).

Following the third ALJ decision, Plaintiff requested a review which was denied by the Appeals Council. (Tr. 684-87). The third ALJ decision is the Commissioner's final decision. On July 24, 2012, Plaintiff filed his Complaint here. (Doc 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal

citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### III. Relevant Evidence and Arguments on Appeal

Plaintiff was forty-two years old on the date he was last insured, March 31, 2005. (Tr. 66, 165.). He has a seventh grade education and previously worked as an ornamental iron worker, mobile home lot utility worker, maintenance repairman, fast food worker, and carpentry worker. (Tr. 974, 976, 1018). Plaintiff alleged a disability onset date of October 12, 2000 due to cervical, lumbar, and thoracic pain, fibromyalgia, paraesthesia in lower left extremity, degenerative disc disease of the cervical spine, degenerative joint disease of the great toes bilaterally, parenthesis of the left lower extremity, arthritis, and a herniated disc. (Tr. 172-73, 445-57).

Here, Plaintiff alleges (1) that the ALJ failed to show good cause for not crediting the opinions of Plaintiff's treating physician, Dr. Christopher Leber, and instead giving credit to the opinion of the nonexamining medical expert; and (2) that the Commissioner erred in his analysis

of Plaintiff's pain and side effects by concluding that the Plaintiff's subjective complaints are not supported by the objective medical evidence even though the nonexamining medical expert testified that each patient handles pain differently and that the Plaintiff's experience of pain and side effects was not unreasonable.

### IV. Analysis

The ALJ showed good cause for the weight he accorded to the Plaintiff's treating physician, Dr. Leber. Further, he showed good cause to give some weight to the opinion of the nonexamining medical expert. The ALJ evaluated Dr. Leber's opinion and properly declined to accord it substantial weight because, as the ALJ found, Dr. Leber's opinions were not supported by his own treatment notes and were inconsistent with the overall record evidence, and certainly not bolstered by it.[2] The ALJ also provided reasons, supported by substantial evidence, for discrediting the Plaintiff's assertions of disabling pain and medication side effects.

As a preliminary matter, the Court recognizes that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991); *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "Good cause" exists when the "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a

---

[2] In assessing the medical records, and inconsistencies between Dr. Leber's assessments and those records, the ALJ continued on past 2005. This additional analysis was likely unnecessary in light of the substantial evidence referenced by the ALJ to support his findings that related directly to the relevant period. In any event, where, as here, Plaintiff's treating physician offered opinions after the date last insured *and* since he expressly stated that Plaintiff's condition would have continued to deteriorate after the date last insured, it seems reasonable that the ALJ would assess the records he had that either supported or contradicted such an opinion.

5

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Philips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Importantly, an ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician. *Id.* at 1240-41. Here, the ALJ did just that. (See Tr. 772-782).

Similarly, if an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Department of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence). Here, too, the ALJ set for this reasons for his findings. (See Tr. 772-778, 781-782).

As stated, Plaintiff argues that the ALJ failed to articulate good cause for giving little weight to the opinion of the Plaintiff's treating physician, Dr. Leber. Pursuant to the District Court's directives to the Appeals Council, the ALJ gave further consideration to the functional limitations offered by Dr. Leber in 2006, and additionally re-considered the functional limitations offered by Dr. Leber for 2003, 2004, and 2010. (Tr. 779-80). Upon re-consideration, the ALJ set forth several reasons for giving little weight to Dr. Leber (See Tr. 772-782), as well as for discrediting Plaintiff's complaints.

In fact, the ALJ, in reviewing the medical records, lays out the Plaintiff's complaints and treatment, and then compares those complaints to records and laboratory findings that reveal either restrictions that are less severe than Plaintiff's complaints, or findings that are normal or otherwise inconsistent with the Plaintiff's complaints. (See, e.g., Tr. 772/778). This analysis alone shows that the ALJ properly considered the record and set forth substantial evidence to support his findings. Notably, this analysis also reveals that the ALJ did not discredit Dr. Leber

or the Plaintiff based solely on the nonexamining opinions of Dr. Charles Hancock (though his opinions were certainly considered); rather, this analysis shows that objective medical records, including Dr. Leber's own treatment notes, were reviewed and relied upon by the ALJ, and support the ALJ's findings on these matters.

A very brief example of the ALJ's assessment – his compare and contrast, if you will – is set forth below:

With respect to the claimant's musculoskeletal impairments, as previously detailed in the underlying October 2004 and March 2007 decisions, *the claimant has received essentially conservative treatment for his neck, back and extremity pain complaints*. The claimant sought treatment for discomfort in his left arm and shoulder and neck on October 3, 2000 and *physical examination revealed largely uninhibited movement in the cervical spine, no gait or station abnormalities and essentially normal grip and muscle strength in the upper extremities* (Ex. 1 F /7). *Results of an EMG/nerve conduction study test of the claimant's upper extremities performed on October 17, 2000 revealed normal motor and sensory latencies and did not support the presence of entrapment neuropathy and needle electrode testing did not evidence cervical radiculopathy* (Ex. 1F/3-4). *Radiographs of the cervical spine showed mild degenerative changes and x-rays of the left elbow revealed some developmental deformity of the posterior part but "nothing unusual"* (Ex. 2F/5).

The claimant was evaluated by Miguel Machado, a neurosurgeon, on December 12, 2000 for neck and left arm pain. Dr. Machado *found 5/5 strength in all muscle groups, intact sensation and normal reflexes upon examination*. Some weakness in the paraspinal muscles on the left side of the neck with stiffness to movement was also noted. Magnetic resonance imaging (MRI) studies of the cervical spine showed *a very small disc herniation at C5-6 and slight degenerative disc changes in the lumbar spine with mild posterior bulging at L4-5 with no definite nerve root compression or displacement. Dr. Machado did not recommend surgical intervention* and referred the claimant for cervical and lumbar steroid injections (Ex. 3F, 6F and 8F).

The claimant complained of severe left foot pain in March 2001 (Ex. 8F/16), but *no motor or sensory deficits were found in the lower extremities upon examination* (Ex. SF/16) and *x-rays of the left foot were unremarkable* (Ex. 8F/13 and 11F/16). Dr. Machado reported that while the claimant had paraspinal muscle spasms in the lower back and decreased motion in the cervical and lumbar spine on June 21, 2001, *there were no motor, sensory or reflex deficits and the claimant was able to toe-heel walk and squat*. He further indicated that the *claimant's gait was normal*, but pain was noted with standing or walking for more than 5 minutes (Ex. 4F). A *June 29, 2001 MRI of the thoracic spine showed only mild degenerative changes* (Ex. 11F/5). *Dr. Machado noted the claimant was "still supposedly [ ] having problems with pain" in September 2001 despite having been on physical therapy for a long period of time and advised the claimant that he needed to increase his activities and exercise* (Ex. 6F/1).

(See Tr. 772-773) (emphasis added.)

7

A plain reading of the ALJ's opinion reveals that he reviewed medical records that were both inconsistent with the very severe and limiting restrictions proposed by Dr. Leber and the Plaintiff's subjective complaints. Although the opinion itself recites much of the medical evidence that supports the ALJ's findings, I will note a few as well here.

Contrary to Dr. Leber's limitations, which include (from the 2006 assessment) that due to degenerative disc disease and degenerative joint disease, the Plaintiff is only able to lift or carry 5-10 pounds, stand or walk for less than one hour, sit for two to three hours, lay down for up to one to two hours, never climb, stoop or crawl, and only occasionally balance, crouch, or kneel, and that he is required to use a cane to ambulate, rest every two to four hours due to pain and fatigue, and that his pain medicine could be sedative or confusing (Tr. 963-69), the ALJ points out numerous contrary records.

Notably, the imaging studies conducted throughout the period of alleged disability did not reveal significant spinal disorder. (Tr. 779); *See Wheeler*, 784 F.2d at 1075 (discussing that limited weight may be given to a treating physician if his opinions are not consistent with laboratory findings). In 2000, the radiographs of the cervical spine showed mild degenerative changes and x-rays of the left elbow revealed some developmental deformity but "nothing unusual." (Tr. 256). In 2001, an MRI showed a very small disc herniation at C5-6, slight degenerative disk changes were noted at L4-5, and some mild posterior bulging of the disk with minimal flattening of the anterior aspect of the thecal sac. (Tr. 272, 286-87). Additionally, there was neither definite nerve-root compression nor displacement present at that level but lesser bulging of disks is present at other levels. (Tr. 272, 286-87). Dr. Miguel Machado, a neurologist, also noted that the MRI of the thoracic spine did not show a significant lesion. (Tr. 283). The MRI in 2003 showed mild early degenerative disk disease and no disk herniation or

spinal stenosis. (Tr. 488). And, jumping forward, in August 2007 an MRI showed left disc protrusion at C5-6 and C6-7 without spinal stenosis, small disc protrusion at T3-4, and bilateral degenerative facet disease at T5-6 resulting in anterolisthesis but without spinal stenosis. (Tr. 918-22).

In addition to a lack of a significant spinal disorder, the ALJ noted additional studies of the Plaintiff's wrist. (Tr. 772). In 2000, the EMG/nerve conduction study test performed by Dr. Gerard Gerling of the Plaintiff's upper extremities revealed normal motor and sensory latencies which did not show entrapment neuropathy and the needle electrode testing did not evidence cervical radiculopathy. (Tr. 248). During this test it was noted that the Plaintiff had symptoms similar to carpal tunnel syndrome and a therapeutic trial of wrist injections was suggested. (Tr. 248). However, in June 2001 the Plaintiff's grip strength was reported normal by Dr. Machado. (Tr. 273).

Furthermore, the ALJ thoroughly discussed – and appropriately considered – the fact that the Plaintiff received essentially conservative treatment for his neck, back, and extremity pain complaints. (Tr. 772). In 2000, the Plaintiff was treated with spinal blocks and Dr. Machado recommended that the Plaintiff increase his activities and exercising. (Tr. 284, 287-88, 773). Dr. Machado also opined that surgical intervention was not needed. (Tr. 284-90). Also, in 2001, Dr. Stanescu, an examining physician, denied authorizing the Plaintiff for a handicap sticker because he opined that the Plaintiff's condition did not qualify him. (Tr. 305-06). In 2002, Dr. Robert Dehgan, a specialist in physical medicine and rehabilitation, noted that the Plaintiff ambulated with a normal gait and had no discomfort getting in and out of the chair or examination table. (Tr. 594). He later opined that the Plaintiff's subjective complaints appeared to outweigh objective and laboratory findings. (Tr. 595).

Throughout the relevant period, the Plaintiff was prescribed and took narcotic medications which at times resulted in side-effects. The treatment notes also show, however, that when changes were made, the Plaintiff denied significant side-effects. (See Tr. 774, discussing medical records). Notably, Dr. Hancock testified that he would not treat a patient in the Plaintiff's condition with such long-term narcotic medications. (Tr. 778). In any event, in 2005, Plaintiff reported that after changes were made to his medication he did not have significant side-effects. (Tr. 533).

Other than prescribing opioid medications, Dr. Leber opined that a cane was medically necessary for ambulation. However, just a few months after the relevant period, the Plaintiff was observed not using the cane for ambulation and was observed transitioning from seated to standing position without difficulty. (Tr. 937, 947). Many treatment notes show that the Plaintiff ambulated without using a cane. (See Doc. 20, p. 7, referencing records).

Dr. Leber's treatment records show that the Plaintiff's musculoskeletal and neurological condition remained relatively stable where his gait was noted as being only mildly antalgic and that he had not been using a cane since August 2006. (Tr. 779). Further, the ALJ noted that in 2006 the Plaintiff's extremities were routinely found to be in an active range and that pain medication gave him relief. (Tr. 780). In addition, between 2002 and 2006 it was often reported by Dr. Leber that neurological examination was unremarkable, he was not in acute distress, his pain was treated with medications, and he had active range of motion in his extremities. (See, e.g., Tr. 773).

Beyond the relevant period, the ALJ noted that Plaintiff improved with no significant side effects after changes were made to his medicinal regimen. (Tr. 780). The ALJ noted also that there were no reported impairments in the Plaintiff's cognition in May 2006, despite

experiencing pain while using the Duragesic patch. (Tr. 780). Further, in June 2006, Methylphenidate was no longer needed and one month later the Plaintiff was observed as being pleasant, alert, oriented, and not in acute distress. (Tr. 780). In November 2006, the Plaintiff reported that his pain was under control on a lower dosage of the Duragesic patch. (Tr. 780). The ALJ notes that these improvements in the Plaintiff's condition beginning in May 2006 conflict with Dr. Leber's assessments which state that the Plaintiff's pain reducing medications can be sedative or confusing. (Tr. 969).

Briefly, other medical records support the ALJ's assessment insofar as they are inconsistent with the limitations offered by Dr. Leber and Plaintiff's own complaints: in May 2007 Plaintiff tolerated his medications well; physical exam revealed active range of motion in the upper and lower extremities; he was observed moving around the room freely and tending to his 3-year old, who was purportedly "very active" (Tr. 927) at an appointment; an MRI in August 2007 showed disc protrusion in the lumbar spine but no spinal stenosis, he was observed having a steady gate in September 2007; he reported doing "great" in December 2007; in 2008 he was not using an assistive device; he had a normal gait and active range of motion in all extremities in 2008; his medications in September 2008 were helpful without adverse side effects and he denied difficulty concentrating or somnolence; and he denied memory deficits or impaired concentration in October 2008 and again in December 2008. (See, e.g., Tr. 777). This state of affairs seems to have continued in 2009 and 2010. (See, e.g., Tr. 777).

The ALJ also relied, in part, on the testimony of Dr. Charles Hancock, a non-examining medical expert, who after reviewing the entire record, suggested that Dr. Leber's notes were contradictory. (Tr. 780). Dr. Hancock referred to conflicting portions of Dr. Leber's treatment records where the Plaintiff was reported to have normal muscle tone yet decreased muscle

strength, normal bicep strength yet weakened grip strength, and lumbar spine flexion in ninety degrees without obvious pain yet other times limited range in his lumbar spine. (Tr. 450, 780, 1001-03). The inconsistencies in Dr. Leber's treatment notes regarding muscle strength and range of motion are reflected in the record. (Tr. 450, 506). Further, Dr. Hancock noted that there was a lack of appreciable treatment for the Plaintiff's lower extremity problems which resulted in an antalgic gait other than the continued use of pain medication and a single point cane. (Tr. 547-48, 780).[3] Dr. Hancock also suggested that Dr. Leber's notes lacked a certain specificity that would allow him to understand the reasoning for the seemingly contradictory statements in the treatment records. (Tr. 1002).

Dr. Hancock offered his opinion about the inconsistencies in Dr. Leber's treatment notes as well as the Plaintiff's physical impairments. (Tr. 1001-1003). Based on his examination of the entire record, Dr. Hancock opined that the Plaintiff could sit for eight hours, stand for six hours, and walk for six hours each during an eight hour work day. (Tr. 995). He opined that Plaintiff could lift ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally. (Tr. 996). Further, he opined that Plaintiff did not have any restrictions with hand, leg, or feet movements; Plaintiff could frequently bend, squat, crawl, climb, and reach; Plaintiff could occasionally be exposed to unprotected heights and around heavy machinery; Plaintiff could occasionally be exposed to extreme cold, would not be restricted from driving an automobile, and would have no restrictions to dust, fumes, or gasses. (Tr. 996-97). Notably, though, the ALJ's RFC assessment was still significantly more limiting than Dr. Hancock's assessment.

---

[3] The Plaintiff took several different pain medications to treat the problems in his lower extremities even though the medications were later reported to not be effective at controlling the Plaintiff's pain. (Tr. 445-57, 515-16, 536-37, 547-48).

The ALJ further credited the opinions of the State agency medical consultants to the extent they were consistent with his RFC determination and the record evidence. (Tr. 780). Both of the State agency medical consultants opined in July and October of 2001 that the Plaintiff could occasionally lift or carry 50 pounds, and frequently 25 pounds; Plaintiff could stand or walk about six out of eight hours, sit for six out of eight hours, and had no limitations in pushing or pulling. (Tr. 276). Further, the consultants opined that the Plaintiff did not have any visual, communicative, or manipulative limitations. (Tr. 277-79). The only limitations on either functional assessment were limitations involving the Plaintiff's capacity to occasionally balance, stoop, kneel, crouch, crawl, and Plaintiff's exposure to concentrated environmental hazards.

The ALJ's comprehensive review of the above mentioned medical records, as well as his thorough opinion, supports his findings as to Dr. Leber, as well as his credibility finding as to the Plaintiff. In addition, though, the ALJ specifically noted the Plaintiff's lack of treatment for his antalgic gait, records showing both use of a cane and ambulation without a cane, reports of no side effects to his medications and reports that adjustments in his medications resolved reported side effects, and his activities of daily living (which include driving, watching television, grocery shopping, light household chores, tinkering in his shed, and listening to the radio), are inconsistent with his reported pain and debilitating medication side effects. (See, e.g., Tr. 781). The records support this finding. Treatment records do, in fact, reflect ambulation without assistance (see Doc. 20, p.7); Plaintiff was observed moving about a room with his then 3 year old son (Tr. 927); medications have effectively controlled Plaintiff's pain, without side effects (Tr. 456, 518, 776, 781, 906, 947); Plaintiff has denied memory deficits, impaired concentration, and somnolence (Tr. 777, 889, 891, and 896); and, his activities of daily living are inconsistent with the claimed limitations (Tr. 977-81).

Accordingly, as discussed above, the ALJ has clearly articulated his reasons for giving less weight to Dr. Leber's opinions and the Plaintiff's own credibility, has thoroughly discussed significant portions of the record evidence that support his findings, and has additionally relied on the opinions of several examining and non-examining physicians. The ALJ incorporated some limitations from Dr. Leber into his RFC, but ultimately found that the Plaintiff was not disabled. The examining opinions of Dr. Stanescu, Dr. Dehgan, and Dr. Machado supported the ALJ's conclusion that the Plaintiff did not suffer from a serious spinal disorder. Further, the ALJ gave credit to the non-examining state agency medical consultants, both of whom found that the Plaintiff was not disabled. Finally, Dr. Hancock's expertise was credited in two ways. First, he examined the treatment notes of Dr. Leber and noted several inconsistencies. Second, he offered his own assessment which reflected the 10 years of medical records including several imaging studies and laboratory tests that he had reviewed. Considering this record as a whole, the Commissioner is due to be affirmed.

## V.    RECOMMENDATION

In view of the foregoing, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE AND ENTERED** in Ocala, Florida, on August 14, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

All Counsel